#26987-aff in pt & rem in pt-LSW

**2015 S.D. 77**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

   v.

CHARLES BIRDSHEAD,                        Defendant and Appellant.


* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE WALLY EKLUND
Judge

* * * *

MARTY J. JACKLEY
Attorney General

CRAIG M. EICHSTADT
Assistant Attorney General
Pierre, South Dakota                      Attorneys for plaintiff
                                          and appellee.


JAMY PATTERSON
Pennington County Public
  Defender's Office
Rapid City, South Dakota                  Attorneys for defendant
                                          and appellant.


* * * *

ARGUED JANUARY 14, 2015

OPINION FILED **10/21/15**

#26987

WILBUR, Justice

[¶1.]  Charles Birdshead, who was attacked during a drug transaction, used lethal force against one of the perpetrators.  Birdshead was tried by a Pennington County jury and convicted of first-degree manslaughter, possession of a controlled weapon, and distribution of a controlled substance to a minor.  The circuit court sentenced him to 45 years in the South Dakota State Penitentiary.  Birdshead appeals.  We affirm in part and remand in part.

## Background

[¶2.]  On January 7, 2013, J.B. sent Birdshead a message on Facebook asking Birdshead to acquire drugs for her and her friend.  J.B. was fifteen years old at the time, and Birdshead had known her for approximately five or six months.  Birdshead arranged for the drug transaction to occur with J.B. that same day at the Dakota Rose Motel in Rapid City, South Dakota.

[¶3.]  When J.B. sent Birdshead the Facebook message, she was at Amber Larvie's home.  Frank Milk, Eustacio Marrufo, and J.B.'s aunt Shy Bettelyoun were also at Larvie's home.  J.B., Milk, Marrufo, and Bettelyoun left Larvie's home for the Dakota Rose Motel in a white van and arrived approximately 40 minutes before Birdshead.  Bettelyoun parked the van in the parking lot of the motel.  Birdshead arrived and parked his car next to the van.  J.B. exited the van and got into Birdshead's car while Milk, Marrufo, and Bettelyoun remained in the van.  Shortly thereafter, Milk and Marrufo jumped out of the van and ran towards Birdshead's car.  Milk attacked Birdshead through the open driver-side window, while Marrufo opened the passenger-side door and climbed over J.B. to attack Birdshead.

-1-

[¶4.]     It is uncontested that Marrufo and Milk initiated the fight. However, the parties disputed the manner in which Marrufo and Milk attacked Birdshead. Birdshead told law enforcement that he felt as if Marrufo was "hitting [him] with something." At trial, J.B. and Bettelyoun testified that Milk and Marrufo used only their bare fists to attack Birdshead.[1]

[¶5.]     While Marrufo and Milk were attacking Birdshead, Birdshead removed a .410 gauge shotgun from a bag located between his driver's seat and the driver-side door. The shotgun had a hammer that needed to be pulled back and cocked before it could be fired. Birdshead had obtained the shotgun from his friend Rodney Hickey the previous day, January 6, 2013, and prior to his Facebook conversation with J.B. arranging this drug transaction. The shotgun, about sixteen inches in overall length with a twelve-inch barrel, is an illegally short shotgun.

[¶6.]     Birdshead and Milk struggled over possession of the shotgun. At some point during the struggle, Birdshead pulled the trigger and shot Marrufo.[2] The autopsy report indicated that Marrufo died of a point-blank shotgun blast to the chest. Birdshead told law enforcement that he brought the shotgun to the drug

---

1.     Pathologist Don Habbe testified that bruises on Marrufo's right knuckles were "consistent with Marrufo attacking or assaulting Birdshead." Miranda Brown Bull testified that she observed "a lot of blood coming down" Birdshead's neck and a square injury to the top of his head. Detective Steve Neavill testified that he observed an injury to Birdshead's eye and that it was "possible" that he was attacked with an object.

2.     In his statement to law enforcement, Birdshead claimed that the shooting was accidental.

transaction because "I can't . . . go around without[] being able to . . . protect myself you know."

[¶7.] The State filed an eight-count indictment against Birdshead. The first three charges included alternative counts of manslaughter in the first degree in violation of SDCL 22-16-15: Count 1: killing during the course of the commission of a felony; Count 2: killing by means of a dangerous weapon; Count 3: unnecessary killing while resisting any attempt to commit a crime. The remaining charges included: Count 4: commission of a felony with a firearm in violation of SDCL 22-14-12; Count 5: possession of a controlled weapon in violation of SDCL 22-14-6; Count 6: distribution of a controlled substance to a minor in violation of SDCL 22-42-2; Counts 7 and 8: fourth-degree rape in violation of SDCL 22-22-1(5). Birdshead pleaded not guilty to all eight counts.

[¶8.] The circuit court severed Counts 1 through 5 from Counts 6 through 8, and a jury trial was held on July 29, 2013, for Counts 1 through 5. Birdshead moved for judgment of acquittal after the close of the State's case. The court dismissed Count 1 due to insufficient evidence of the underlying felony of distribution of a controlled substance. The jury found Birdshead guilty of Count 2 (killing by means of a dangerous weapon), Count 4 (commission of a felony with a firearm), and Count 5 (possession of a controlled weapon).

[¶9.] The court denied Birdshead's motion for a new trial on September 20, 2013. Two months later, on November 20, 2013, Birdshead pleaded guilty to Count 6 (distribution of a controlled substance to a minor). The State dismissed Count 7 and Count 8. At sentencing, the court dismissed Count 4, stating, "I think that's

been obvious for some time . . . that Mr. Birdshead should not be sentenced on that charge." The court sentenced Birdshead to 45 years in the penitentiary on Counts 2, 5, and 6.

[¶10.] Birdshead appeals his convictions for Count 2 and Count 5, and we restate the issues as follows:

1. Whether the circuit court erred when it instructed the jury on a reduced mens rea of recklessness for the charge of first-degree manslaughter.

2. Whether the circuit court abused its discretion in permitting misleading jury instructions that emphasized the illegality of the firearm.

3. Whether the circuit court abused its discretion in denying Birdshead's proposed jury instructions.

4. Whether the circuit court failed to properly instruct the jury as to the alleged felonies being committed upon Birdshead.

5. Whether the circuit court violated Birdshead's Fifth and Sixth Amendment rights by excluding certain evidence and by limiting confrontation of key witnesses.

6. Whether Birdshead was denied his right to present the complete theory of his defense.

7. Whether the circuit court abused its discretion and denied Birdshead a fair trial with admission of impermissible 404(b) evidence.

8. Whether the cumulative errors denied Birdshead a fair trial.

### Analysis

[¶11.] **1. Whether the circuit court erred when it instructed the jury on a reduced mens rea of recklessness for the charge of first-degree manslaughter.**

[¶12.]      Birdshead was convicted of first-degree manslaughter in violation of SDCL 22-16-15(3). The circuit court instructed the jury on the requisite mens rea for first-degree manslaughter: "When a person intentionally *or recklessly* does an act which the law declares to be a crime, the person is acting with criminal intent, even though the person may not know that the conduct is unlawful." (Emphasis added.) The State had requested that the language "or recklessly" be added to the pattern instruction. The court added the language over Birdshead's objection.

[¶13.]      Birdshead argues that because SDCL 22-16-20 defines second-degree manslaughter as the "reckless killing of one human being," first-degree manslaughter under SDCL 22-16-15 must require proof of a greater mens rea than "recklessness." He contends that to conclude otherwise would render second-degree manslaughter meaningless—a reckless killing would always be first-degree manslaughter. He asserts, therefore, that by including "recklessness" in the definition of criminal intent, the court's jury instruction deprived him of the right to have the State prove every element of the offense of first-degree manslaughter beyond a reasonable doubt.

[¶14.]      We review a circuit "court's decision to grant or deny a particular instruction" and "the wording and arrangement of its jury instructions" for an abuse of discretion. *State v. Roach*, 2012 S.D. 91, ¶ 13, 825 N.W.2d 258, 263 (quoting *State v. Klaudt*, 2009 S.D. 71, ¶ 13, 772 N.W.2d 117, 121). "[A] court has no discretion to give incorrect or misleading instructions, and to do so prejudicially constitutes reversible error." *State v. Jones*, 2011 S.D. 60, ¶ 5 n.1, 804 N.W.2d 409, 411 n.1. We consider jury instructions "as a whole, and if the instructions when so

read correctly state the law and inform the jury, they are sufficient. This is a question of law reviewed de novo." *State v. Waloke*, 2013 S.D. 55, ¶ 28, 835 N.W.2d 105, 113 (quoting *Klaudt*, 2009 S.D. 71, ¶ 13, 772 N.W.2d at 121).

[¶15.]	From our review of the jury instructions as a whole, the court's instructions were sufficient. *See id.* The court properly instructed the jury on the elements of the offense of first-degree manslaughter under SDCL 22-16-15(3). Moreover, the court instructed the jury that "[t]he State has the burden of proving every element of the offense charged beyond a reasonable doubt." We have said first-degree manslaughter is a general intent crime. General intent "require[s] that the offender 'engage in conduct' that is prohibited by the statute, 'regardless of what the offender intends to accomplish.'" *State v. Schouten*, 2005 S.D. 122, ¶ 13, 707 N.W.2d 820, 824 (quoting SDCL 22-1-2(1)(b)). It "means an intent to do the physical act—or, perhaps, *recklessly* doing the physical act—which the crime requires." *Id.* (emphasis added) (quoting *State v. Taecker*, 2003 S.D. 43, ¶ 25, 661 N.W.2d 712, 718); *State v. Mulligan*, 2007 S.D. 67, ¶ 9, 736 N.W.2d 808, 813. Because the court properly instructed the jury and because Birdshead could be found guilty for his reckless doing of the prohibited act under SDCL 22-16-15(3), the circuit court's mens rea instruction did not lessen the State's burden to prove every element of the offense beyond a reasonable doubt.

[¶16.]	**2.	Whether the circuit court abused its discretion in permitting misleading jury instructions that emphasized the illegality of the firearm.**

[¶17.]	A circuit "court has no discretion to give incorrect or misleading instructions, and to do so prejudicially constitutes reversible error." *Jones*, 2011

S.D. 60, ¶ 5 n.1, 804 N.W.2d at 411 n.1. Birdshead argues that the circuit court "created undue prejudice by requiring [him] to stand trial on counts that were impermissibly charged and contrary to the law." During trial and the settling of instructions, Birdshead requested the dismissal of either Count 2 (manslaughter by means of a dangerous weapon) or Count 4 (commission of a felony with a firearm). This request was premised on the contention that SDCL 22-14-14 precluded Count 2 and Count 4 from coexisting in the indictment because the use of a dangerous weapon is a necessary element of manslaughter by means of a dangerous weapon (Count 2). SDCL 22-14-14 provides:

> A violation of § 22-14-12 shall be charged in the indictment or information as a separate count in addition to the principal felony or attempted felony alleged to have been committed. *No offense may be charged under those sections if the use of a dangerous weapon is a necessary element of the principal felony alleged to have been committed or attempted.*

(Emphasis added.) The jury returned a guilty verdict for both Count 2 and Count 4. In recognition of SDCL 22-14-14, the circuit court dismissed Count 4 at sentencing. This cured the violation. *See State v. Chavez*, 2002 S.D. 84, ¶ 19, 649 N.W.2d 586, 593.

[¶18.] Birdshead, nonetheless, argues that he was prejudiced because the coexistence of Count 2 and Count 4, along with the court's Instruction 13 (defining justifiable homicide), misled and confused the jury that it could not find justifiable homicide because use of the firearm was illegal.[3] Instruction 13 provided:

---

3. Birdshead bases this confusion on the fact that the jury did not return a guilty verdict on Count 3 (unnecessary manslaughter while resisting an attempt to commit a crime). The jury returned a note on day two of jury

(continued . . .)

> A homicide is justifiable if committed by any person in the *lawful* defense of such person of when there is reasonable ground to apprehend a design to commit a felony, or to do some great personal injury; and imminent danger of such design being accomplished.

(Emphasis added.)  This argument ignores the fact that the State could have argued the illegality of the firearm under Count 5 (possession of a short shotgun).  We therefore find no abuse of discretion or prejudice regarding Instruction 13.

[¶19.]       We further reject Birdshead's argument that he was prejudiced by the court's Instruction 12.  Instruction 12 mirrored SDCL 22-16-31, and provided:

> Homicide is excusable if committed by accident and misfortune in the heat of passion, upon sudden and sufficient provocation, or upon a sudden combat.  However, to be excusable, no undue advantage may be taken nor any *dangerous weapon* used and the killing may not be done in a cruel or unusual manner.

(Emphasis added.)  At trial, Birdshead objected to Instruction 12 because, "[g]iven that a deadly weapon is being used, excusable homicide is not applicable and therefore is confusing and a waste of time."  On appeal, Birdshead claims Instruction 12 prejudiced him because it emphasized the unlawfulness of the firearm and precluded the jury from finding the killing to be "accidental."

---

(. . . continued)

deliberations asking for the definition of "unnecessarily."  Birdshead points out that Count 3 was the only count that did not include "dangerous weapon" as an element of the offense and speculates that the illegality of the firearm influenced the jury's decision and, by extension, could have influenced its decision on justifiable homicide.  In *Mulligan*, however, we quoted the United States Supreme Court for the proposition "that a criminal defendant convicted by a jury on one count [cannot] attack that conviction because it was inconsistent with the jury's verdict of acquittal on another count."  2007 S.D. 67, ¶ 11, 736 N.W.2d at 814 (quoting *United States v. Powell*, 469 U.S. 57, 58, 105 S. Ct. 471, 473, 83 L. Ed. 2d 461 (1984)).

[¶20.]     As support, Birdshead directs this Court to two juror affidavits.  We, however, are precluded from considering juror affidavits that explain any matter or statement that occurred during the course of jury deliberations or anything that affected the minds or emotions of the jurors unless the affidavit relates to extraneous prejudicial information or outside influence that was improperly brought to the attention of the jury.[4]  SDCL 19-19-606(b).  Because these juror affidavits do not relate to any extraneous or outside influence, we decline to consider them.  *See Russo v. Takata Corp.*, 2009 S.D. 83, ¶ 28, 774 N.W.2d 441, 448; *State v. Motzko*, 2006 S.D. 13, ¶ 15, 710 N.W.2d 433, 439-40.

[¶21.]     Finally, Birdshead argues that Instruction 32 confused the jury and prejudiced him.  Instruction 32 provided, "The fact that you may find Defendant guilty or not guilty on any one count of the Indictment, must not control or influence your verdict on any other count or counts in the Indictment."  This instruction was impossible for the jury to follow, Birdshead claims, because the instruction was logically inconsistent with the punitive enhancement of Count 4 (commission of a

---

4.     SDCL 19-19-606(b) provides:

> Except as otherwise provided by statute, upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.  Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

felony with a firearm).  We agree that on its face this instruction may have been misleading to the jury.  However, we cannot say that the inclusion of this instruction made the court's instructions as a whole incorrect, misleading, conflicting, or confusing or that it was harmful to Birdshead's substantial rights. *See Carlson v. Constr. Co.*, 2009 S.D. 6, ¶ 17, 761 N.W.2d 595, 600.

[¶22.]    **3.    Whether the circuit court abused its discretion in denying Birdshead's proposed jury instructions.**

[¶23.]    Birdshead argues that the court abused its discretion when it rejected his proposed jury instruction because it denied him his fundamental right to life and the right to defend himself.  The proposed instruction provided:

> Simply because a person is not permitted to be in possession of a firearm does not mean he is guilty of violating a law prohibiting possession of a firearm if he should come into control of the firearm for purposes of self-defense.

"[W]e generally review a trial court's decision to grant or deny a particular instruction under the abuse of discretion standard." *Roach*, 2012 S.D. 91, ¶ 13, 825 N.W.2d at 263 (quoting *Klaudt*, 2009 S.D. 71, ¶ 13, 772 N.W.2d at 121).  Whether a jury instruction correctly states the law is a question of law reviewed de novo. *Waloke*, 2013 S.D. 55, ¶ 28, 835 N.W.2d at 113.

[¶24.]    Birdshead argues that his proposed instruction is supported by *Conaty v. Solem*, which he contends held that a person can be acquitted of an illegal gun possession charge when reasonably using the gun for self-defense. *See* 422 N.W.2d 102, 104 (S.D. 1988).  *Conaty*, however, does not provide a complete defense to possession of an illegal firearm; it holds that a defendant may have a defense to the statute prohibiting possession of a firearm where the defendant comes into control

of the firearm for purposes of self-defense. *Id.* Birdshead did not come into control of the shotgun for purposes of self-defense against Milk and Marrufo. Therefore, this case does not present the appropriate factual setting for this defense. Accordingly, the circuit court did not abuse its discretion when it rejected Birdshead's proposed jury instruction.

[¶25.]      **4.      Whether the circuit court failed to properly instruct the jury as to the alleged felonies being committed upon Birdshead.**

[¶26.]      The circuit court denied Birdshead's proposed instructions regarding the following felonies: kidnapping, burglary, aggravated criminal entry of a motor vehicle, aggravated assault, and attempted robbery. Birdshead proposed these instructions to support his theory that he was the victim of a violent felony or a simple assault for purposes of the defense of justifiable homicide. Birdshead also objected to the jury instruction on justifiable homicide and proposed an alternate instruction. The circuit court denied both his objection and alternate instruction. Birdshead argues that this was an abuse of discretion because it denied him "the ability to respond to the State's case against him" and denied him "his fundamental constitutional right to a fair opportunity to present a defense." *See State v. Lamont*, 2001 S.D. 92, ¶ 16, 631 N.W.2d 603, 608-09 (quoting *Crane v. Kentucky*, 476 U.S. 683, 687, 106 S. Ct. 2142, 2145, 90 L. Ed. 2d 636 (1986)).

[¶27.]      We review this issue under an abuse of discretion standard. *See Waloke*, 2013 S.D. 55, ¶ 28, 835 N.W.2d at 113. "Upon proper request, defendants are entitled to instructions on their defense theories if evidence supports them." *State v. Pellegrino*, 1998 S.D. 39, ¶ 9, 577 N.W.2d 590, 594. "[A]n accused must be

afforded a meaningful opportunity to present a complete defense. When a defendant's theory is supported by the law and . . . has some foundation in the evidence, however tenuous, the defendant has a right to present it." *Roach*, 2012 S.D. 91, ¶ 13, 825 N.W.2d at 263 (quoting *Klaudt*, 2009 S.D. 71, ¶ 13, 772 N.W.2d at 121). "To warrant reversal, defendants must show that refusal to grant an instruction was prejudicial, meaning 'the jury . . . probably would have returned a different verdict if [the] requested instruction had been given.'" *Pellegrino*, 1998 S.D. 39, ¶ 9, 577 N.W.2d at 594 (alteration in original) (quoting *State v. Rhines*, 1996 S.D. 55, ¶ 111, 548 N.W.2d 415, 443).

### *Felony Instructions*

[¶28.]     Birdshead cites to SDCL 22-16-34 and *Pellegrino* for the proposition that the circuit court erred when it rejected his proposed jury instructions on the violent felonies that were allegedly attempted against him by Milk and Marrufo because, in Birdshead's view, a person may lawfully defend himself with lethal force when a violent felony is committed against that person. SDCL 22-16-34 provides:

> Homicide is justifiable if committed by any person while resisting any attempt to murder such person, *or to commit any felony upon him or her*, or upon or in any dwelling house in which such person is.

(Emphasis added.) In *Pellegrino*, we interpreted SDCL 22-16-34 to impliedly "include the word 'necessary.'" 1998 S.D. 39, ¶ 16, 577 N.W.2d at 596. We stated that "we believe it was never the intent of our forebears when this statute was enacted to encompass felonies not involving a danger of serious bodily harm." *Id.* ¶ 17, 577 N.W.2d at 597. To conclude otherwise, "one might justifiably be shot while forging a check in someone's home." *Id.* ¶ 14, 577 N.W.2d at 596. A person

does not hold his life "at the mercy of unreasonable fears or excessive caution of others, and if from such motives human life is taken, there is no justification." *Id.* ¶ 16, 577 N.W.2d at 597 (quoting *Harris v. State*, 104 So. 2d 739, 743 (Fla. Dist. Ct. App. 1958)).

[¶29.] We addressed a similar argument in *State v. Walton*, 1999 S.D. 80, ¶¶ 10-14, 600 N.W.2d 524, 528-29. In *Walton*, the circuit court refused two instructions on fourth-degree burglary. Walton claimed that the instructions were essential to his defense theory that he was defending himself against his attacker. We stated that the jury heard testimony that a fight ensued and Walton acted in self-defense, yet the jury still found Walton guilty of first-degree manslaughter. Because there was nothing to suggest that had the instructions on fourth-degree burglary been granted the jury would have reached a different verdict, we held that the court did not err when it rejected the proposed instructions. *Id.* ¶ 14, 600 N.W.2d at 528-29.

[¶30.] Likewise, here, the jury heard testimony that Birdshead was attacked while he was sitting in his car. They also heard testimony pertaining to the manner in which Birdshead was attacked and the extent of his injuries. Birdshead did not testify, but the video from his interview with law enforcement was played for the jury. Therefore, the jury heard Birdshead claim that he acted in self-defense. Yet, after hearing this testimony, the jury still found Birdshead guilty of the charged crimes. As in *Walton*, there is no indication that the jury would have returned a different verdict had they been instructed on the various offenses that Marrufo and

#26987

Milk attempted to commit against him. *See* 1999 S.D. 80, ¶ 14, 600 N.W.2d at 529-30.

***Justifiable Homicide Instruction***

[¶31.]     Birdshead also objected to the circuit court's jury instruction on justifiable homicide. Instruction 8 provided:

> Under certain circumstances it is lawful to use or attempt or offer to use force or violence upon or toward the person of another. The force or violence may be employed under the following circumstances:
>
>> 1. In preventing or attempting to prevent an offense against a person or the person of any family or household member; or
>>
>> 2. In preventing or attempting to prevent an illegal attempt by force to take or injure property in a person's lawful possession.
>
> Under any of the circumstances described above the force or violence may be used, offered or attempted either by a person having a reasonable apprehension of threat of bodily injury or by another person aiding or defending a person threatened with bodily injury. The force or violence used may never be more than sufficient to prevent such offense.

This instruction, along with Instructions 9 and 10, fully set out the law for justifiable homicide.[5]

---

5.     Instruction 9 provided:

> A person who has been attacked and who is exercising the right of lawful self-defense is not required to retreat, and may not only defend against the attack, but also may pursue the assailant until secure from danger if that course appears to the defendant, and would appear to a reasonable person in the same situation, to be reasonably and apparently necessary; and this is the defendant's right even if safety may have been more easily gained by withdrawing from the scene.

Instruction 10 provided:

(continued . . .)

-14-

***Detective Steve Neavill Testimony***

[¶32.]        Lastly, Birdshead argues that the circuit court committed prejudicial error when it refused to allow Detective Steve Neavill to testify about the potentially felonious conduct by Marrufo and Milk. Birdshead contends that this left the jury without any guidance as to whether Marrufo's or Milk's conduct constituted a violent felony justifying lethal force. The State points out that Birdshead waived this argument because he failed to cite supporting authority. Even if this argument were not waived, we find no abuse of discretion. Detective Neavill testified as an expert witness, not as an eye witness to the crime or as a lay witness. We have said that "expert testimony on points of law is largely inadmissible because it is not helpful under FRE 702[.]" *Zens v. Harrison*, 538 N.W.2d 794, 796 (S.D. 1995) (quoting Mueller & Kirkpatrick, *Federal Evidence* § 252 (2d ed. 1994)). "This Court will only disturb decisions of the trial court regarding the admission of evidence if there is a clear abuse of discretion." *State v. Jolley*, 2003 S.D. 5, ¶ 5, 656 N.W.2d 305, 307 (quoting *State v. Orelup*, 520 N.W.2d 898, 900-01 (S.D. 1994)).

---

(. . . continued)

> The kind and degree of force which a person may lawfully use in self-defense are limited by what a reasonable person in the same situation, seeing what the defendant sees and knowing what the defendant knows, then would believe to be necessary. Any use of force beyond that is regarded by the law as excessive. Although a person may believe that (he) (she) is acting, and may act, in self-defense, that person is not justified in using a degree of force clearly in excess of that apparently and reasonably necessary under the existing facts and circumstances.

[¶33.]  **5.  Whether the circuit court violated Birdshead's Fifth and Sixth Amendment rights by excluding certain evidence and by limiting confrontation of key witnesses.**

[¶34.]  Birdshead contends that the circuit court prejudicially erred by refusing to admit certain evidence.  The first piece of excluded evidence is an eight-page Facebook conversation between Bettelyoun and Milk.  In that conversation, Milk indicated that he could not bear losing Bettelyoun.  There was evidence presented at trial that Bettelyoun and Birdshead were romantically involved in the past.  One witness testified that Bettelyoun was upset because Birdshead would not have sexual intercourse with her anymore and that Bettelyoun declared "he's going to get robbed."  According to Birdshead, the excluded Facebook conversation was material to his defense because it supported his theory that Milk had a motive to attack Birdshead.  The circuit court did not permit Birdshead to question Milk about this conversation.

[¶35.]  The second piece of excluded evidence is a recording of a telephone conversation between Amber Larvie and her husband Ralph Larvie.[6]  The recording contains statements that Bettelyoun and Milk engaged in an argument on the day of the shooting about a sexual encounter between Milk and another woman.  Bettelyoun had discovered text messages on Milk's phone detailing the sexual

---

6.  The State objects to the inclusion of this transcript in Birdshead's brief because the transcript is not a part of the record on appeal.  *See Spenner v. City of Sioux Falls*, 1998 S.D. 56, ¶ 9, 580 N.W.2d 606, 609-10.  However, the audio recording of the telephone conversation is a part of the record.  Birdshead points out that he included the transcript in order to make it easier for this Court to review the conversation.  We decline to strike the transcript from Birdshead's brief.

encounter. Birdshead claims that this evidence was material to his defense because it helped demonstrate that Milk had a motive to attack Birdshead. Birdshead speculates that when Bettelyoun discovered Milk's infidelity, Milk would do whatever it took to amend his relationship with Bettelyoun, including robbing Birdshead as she previously declared. During trial, Milk and Bettelyoun denied the existence of the text messages. The circuit court did not allow Birdshead to impeach Milk and Bettelyoun's testimony with the recording; nor did it allow Birdshead to question Ralph Larvie about the telephone conversation.

[¶36.]     We review a circuit court's evidentiary rulings under an abuse of discretion standard with a presumption that the rulings are correct. *State v. Carter*, 2009 S.D. 65, ¶ 31, 771 N.W.2d 329, 338. There is prejudice only when "a reasonable jury probably would have a significantly different impression if otherwise appropriate cross-examination had been permitted." *State v. Johnson*, 2007 S.D. 86, ¶ 35, 739 N.W.2d 1, 13 (quoting *State v. Koepsell*, 508 N.W.2d 591, 595 (S.D. 1993)). The circuit "court also has considerable discretion in determining whether testimony is 'inconsistent' with prior statements." *Carter*, 2009 S.D. 65, ¶ 31, 771 N.W.2d at 339 (quoting *State v. Shaw*, 2005 S.D. 105, ¶ 36, 705 N.W.2d 620, 631).

[¶37.]     A defendant's right to present a defense is fundamental. *State v. Huber*, 2010 S.D. 63, ¶ 37, 789 N.W.2d 283, 294. "When a defendant is denied the ability to respond to the State's case against him, he is deprived of 'his fundamental constitutional right to a fair opportunity to present a defense.'" *Lamont*, 2001 S.D. 92, ¶ 16, 631 N.W.2d at 608-09 (quoting *Crane*, 476 U.S. at 687, 106 S. Ct. at 2145).

"This right is 'generally satisfied when the defense is given a full and fair opportunity to probe and expose a witness' infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to witness' testimony.'" *Carter*, 2009 S.D. 65, ¶ 32, 771 N.W.2d at 339 (quoting *State v. Carothers*, 2006 S.D. 100, ¶ 16, 724 N.W.2d 610, 617).

[¶38.]     First, Birdshead sought the admission of the Facebook messages both to impeach Milk and Bettelyoun and as substantive evidence that Bettelyoun and Milk planned to attack Birdshead. The circuit court excluded the evidence on the basis that it was not relevant. The determination of whether evidence is relevant "is committed to the sound discretion of the trial court, for which this Court will not substitute its own judgment." *State v. Wilcox*, 441 N.W.2d 209, 212 (S.D. 1989).

[¶39.]     The content of the Facebook messages was not contradicted at trial. Indeed, Milk testified that he wrote love poems to Bettelyoun and that he could not live without her. The Facebook messages merely bolstered the otherwise truthful testimony of Milk, and therefore served no purpose of impeachment. Furthermore, the primary issue at trial was whether Birdshead was justified in using deadly force to defend himself against Milk and Marrufo. *See Pellegrino*, 1998 S.D. 39, ¶ 16, 577 N.W.2d at 597. The Facebook messages did not shed light on whether Birdshead's use of deadly force was reasonable as it had nothing to do with his intent or state of mind. Thus, we conclude that the circuit court's decision to exclude the Facebook messages between Milk and Bettelyoun on the grounds of relevance was within the sound discretion of the court and we will not disturb that decision. *See Wilcox*, 441 N.W.2d at 212.

[¶40.] Second, Birdshead sought the admission of the recorded telephone conversation between Amber and Ralph Larvie as substantive evidence and as impeachment evidence. However, Amber testified that she did not remember the conversation. Thus the substance of the conversation could not be used to impeach Amber because it does not contradict her testimony. *See Carter*, 2009 S.D. 65, ¶¶ 33-34, 771 N.W.2d at 339. In addition, the telephone conversation could not be used to impeach Bettelyoun or Milk because the conversation did not occur between or involve either Bettelyoun or Milk. The circuit court's decision to exclude the telephone conversation was not an abuse of discretion, and therefore we need not address whether the exclusion of the evidence prejudiced Birdshead. *See Wilcox*, 441 N.W.2d at 212.

[¶41.]     **6.     Whether Birdshead was denied his right to present the complete theory of his defense.**

[¶42.] Birdshead argues that the State committed a *Brady* violation when it called J.B. to testify in its case-in-chief without providing Birdshead any notice of the material changes to her testimony. J.B. testified before the grand jury that Bettelyoun used J.B.'s Facebook account to send messages to Birdshead to set up the drug transaction at the Dakota Rose Motel. In her interviews with law enforcement, J.B. denied sending Birdshead text messages from any phone, including Milk's phone. At trial, J.B. changed her story and testified that she, not Bettelyoun, used her Facebook account to send Birdshead the messages about the drug transaction. She also testified that she used Milk's cellphone to send Birdshead text messages before meeting with him at the Dakota Rose Motel. This testimony contradicted the Dakota Rose Motel video camera, which showed Milk

using the cellphone at all relevant times that the text messages were sent and received.

[¶43.] Birdshead received no indication prior to trial that J.B. would recant her grand jury testimony and her statements to law enforcement. Birdshead asked the court to dismiss the case, and in the alternative, for a mistrial, based on the State's failure to disclose the change in testimony. The State argued that it was not required to disclose the changes in J.B.'s testimony because her testimony was not exculpatory, and that it discovered the change pursuant to work product. The circuit court denied the motion to dismiss and the motion for mistrial.

[¶44.] We review the circuit court's evidentiary rulings under an abuse of discretion standard. *State v. Hannemann*, 2012 S.D. 79, ¶ 19, 823 N.W.2d 357, 362. In *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196-97, 10 L. Ed. 2d 215 (1963), the United States Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." The prosecution commits a *Brady* violation when "(1) '[t]he evidence at issue [is] favorable to the accused, either because it is exculpatory, or because it is impeaching;' (2) the 'evidence [has] been suppressed by the State, either willfully or inadvertently;' and (3) 'prejudice [has] ensued.'" *Thompson v. Weber*, 2013 S.D. 87, ¶ 38, 841 N.W.2d 3, 12 (alterations in original) (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S. Ct. 1936, 1948, 144 L. Ed. 2d 286 (1999)).

[¶45.]    Here, J.B.'s testimony at trial meets the first prong of *Brady*: the evidence at issue was impeaching because it contradicted J.B.'s prior grand jury testimony and statements to law enforcement. *See id.* Considering the second prong of *Brady*, however, there is no evidence in the record indicating that the State willfully or inadvertently suppressed the information. Further, even if we assume that the State willfully or inadvertently suppressed the information, Birdshead has not met his burden of proving that he was prejudiced by the change in J.B.'s testimony. J.B.'s changed testimony did not materially undercut Birdshead's defense theory. *See State v. Krebs*, 2006 S.D. 43, ¶¶ 21-23, 714 N.W.2d 91, 99-100 (reversal because the State withheld inculpatory evidence that "completely undercut" the defendant's theory of defense). Moreover, neither party disputed that Marrufo and Milk instigated the attack. The court also appropriately instructed the jury on Birdshead's claim of self-defense and justifiable homicide. Furthermore, Birdshead had knowledge of the inconsistent statements and made the decision not to use them for impeachment. Birdshead did not cross-examine J.B. during trial after she made the inconsistent statements. Where the only value of the evidence is for impeachment, the risk of prejudice from a discovery violation is reduced. *State v. Jensen*, 2007 S.D. 76, ¶ 16, 737 N.W.2d 285, 290. We conclude that Birdshead was not prejudiced by J.B.'s contradicting testimony at trial.

[¶46.]    Birdshead next asserts that a *Brady* violation occurred when the circuit court precluded him from discovering three sets of documents: Unified Narcotics Enforcement Team (UNET) files pertaining to witnesses, South Dakota Department of Social Services (DSS) records regarding J.B., and J.B.'s school

records. The circuit court stated during a hearing on March 18, 2013, that it would review the documents in camera to determine whether they were discoverable.[7] The circuit court stated in an email that it had reviewed the documents in camera and concluded that the documents were not discoverable.[8] During a hearing on June 10, 2013, the circuit court indicated that it would identify the records that it had examined in camera and provide a basis for its conclusion that the documents were not discoverable. The record, however, does not establish that the circuit court ever provided a basis for its conclusion. On September 30, 2013, the circuit court stated, "It's been long enough that I've forgotten what was submitted to me in camera. I know the ultimate result was that you were not allowed to see it."

[¶47.]        Although Birdshead argues that the circuit court violated *Brady* when it failed to provide a basis for prohibiting discovery of these documents, *Brady* does not apply to errors committed by the circuit court. On the contrary, the second prong of *Brady* requires a showing that *the State* willfully or inadvertently suppressed the information. *Thompson*, 2013 S.D. 87, ¶ 38, 841 N.W.2d at 12 (emphasis added). Here, the State submitted the documents at issue to the circuit

---

7. The court stated, "It's a little bit hard to unring the bell if it's improperly rung, so I'm going to review it."

8. During the June 10, 2013 hearing, defense counsel said:

> Your Honor, I would just like to make a record in case there is any appellate record in this matter. Your Honor, you stated through e-mail to both the State and I that the [c]ourt has reviewed the in camera documents received. I would ask for the record what in camera documents you have received as I am not clear on what you have received as well as the basis for your denial to allow either side to review them in camera and make any appropriate motions.

court for in-camera review, and the court ultimately denied discovery. Accordingly, we reject this argument.

[¶48.] However, Birdshead further argues that the circuit court erred because, without the court's reason for denying Birdshead access to the documents submitted in camera, there is no way to determine if a *Brady* violation occurred. *See State v. Christopherson*, 482 N.W.2d 298, 303-04 (S.D. 1992) (citing *Pennsylvania v. Ritchie*, 480 U.S. 39, 107 S. Ct. 989, 94 L. Ed. 2d 40 (1987)). We review a court's decision to release records after an in-camera review under an abuse of discretion standard. *State v. Ball*, 2004 S.D. 9, ¶ 9, 675 N.W.2d 192, 195. Although, here, the court was clear in ruling that Birdshead would be denied access to the documents submitted for in-camera review, the court should have provided a basis for its decision. *See Andrews v. Ridco, Inc.*, 2015 S.D. 24, ¶ 42, 863 N.W.2d 540, 554-55. Nonetheless, from our independent review of the DSS record and J.B.'s school records, the court did not abuse its discretion when it denied Birdshead access to those documents, and therefore, no *Brady* violation occurred. *See Ball*, 2004 S.D. 9, ¶ 11, 675 N.W.2d at 195; *State v. Layton*, 337 N.W.2d 809, 814 (S.D. 1983).

[¶49.] However, we are unable to determine if the circuit court abused its discretion in regard to the UNET files. Although the circuit court specifically informed Birdshead that it examined the UNET files and that it would include within the record all the documents it reviewed in camera, there are no UNET files within the settled record. We, therefore, remand for the circuit court to include the UNET files within the record and reconsider the *Brady* issue as to the UNET files.

We further direct the circuit court to issue a written decision determining whether there is evidence at issue favorable to the accused, either because it is exculpatory, or because it is impeaching. *See Thompson*, 2013 S.D. 87, ¶ 38, 841 N.W.2d at 12. If the circuit court determines that the UNET files contain evidence favorable to Birdshead, the court must then determine whether a *Brady* violation occurred such that Birdshead would be entitled to a new trial. *See Krebs*, 2006 S.D. 43, ¶¶ 21-23, 714 N.W.2d at 99-100.

[¶50.]     **7.     Whether the circuit court abused its discretion and denied Birdshead a fair trial with admission of impermissible 404(b) evidence.**

[¶51.]     Birdshead next argues that the circuit court abused its discretion when it failed to conduct the two-part balancing test on the record, *see* SDCL 19-19-403,[9] to determine whether certain other-act evidence was admissible and whether the admission of the other-act evidence denied him a fair trial. We review a circuit court's decision to admit or deny other-act evidence under Rule 404(b) for an abuse of discretion. *State v. Boe*, 2014 S.D. 29, ¶ 20, 847 N.W.2d 315, 320. "An abuse of discretion 'is a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full consideration, is arbitrary and unreasonable.'" *Kaberna v. Brown*, 2015 S.D. 34, ¶ 13, 864 N.W.2d 497, 501 (quoting *Gartner v. Temple*, 2014 S.D. 74, ¶ 7, 855 N.W.2d 846, 850). Yet "[w]hen a trial court misapplies a rule of evidence, as opposed to merely allowing or refusing

---

9.     The Code Commission, with approval of the Supreme Court, renumbered the sections in SDCL chapters 19-9 to 19-13, inclusive, and 19-14 to 19-18. Therefore, subdivision SDCL 19-19-403 is substituted for SDCL § 19-12-3 to reflect the transfer of § 19-12-2 to subdivision SDCL 19-19-403.

questionable evidence, it abuses its discretion." *State v. Packed*, 2007 S.D. 75, ¶ 24, 736 N.W.2d 851, 859 (quoting *State v. Guthrie*, 2001 S.D. 61, ¶ 30, 627 N.W.2d 401, 415).

[¶52.] At the pretrial motion hearing, the circuit court did not make a definitive ruling on the record on Birdshead's objection to the State's notice of intent to introduce other-act evidence at trial. *See* SDCL 19-19-103(a). Rather, it remarked that the other-act evidence "does seem to go to the matter of whether this was an accident[.]" It then acknowledged that the other-act evidence would likely be admitted for that purpose. The court ultimately left the matter open for a final ruling at trial.

[¶53.] In order to preserve appellate review of an evidentiary error, a defendant must obtain a definitive ruling on the record admitting or excluding the evidence.

> Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and:
>
> > (1) Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context;
> >
> > . . . .
>
> Once the court makes a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal.

SDCL 19-19-103(a). In *State v. Johnson*, we defined "definitive" as "[d]etermining finally; decisive . . . [a]uthoritative and complete." 2009 S.D. 67, ¶ 14, 771 N.W.2d 360, 366 (quoting *The New American Heritage Dictionary* 375 (2d ed. 1991)).

[¶54.] Here, Birdshead objected to and preserved for our review the admission of the following: (1) evidence relating to a backpack found in the home of Sabrina Martin; (2) evidence found inside a black bag in the home of Miranda Brown Bull; (3) evidence found in the motel room of Rod Hickey; and (4) evidence relating to an incident involving Birdshead on July 18, 2012. On the first three, however, Birdshead does not identify how he was prejudiced by the admission of the evidence.[10] He merely argues that the circuit court abused its discretion when it admitted the evidence without conducting the Rule 403 balancing test. Because Birdshead does not allege prejudice, we need not examine whether the court abused its discretion.

[¶55.] Regarding the July 2012 incident, however, Birdshead specifically contends he was prejudiced by the court's erroneous admission of the evidence. On July 18, 2012, law enforcement investigated and confirmed a report that Birdshead was sleeping in his car. The officers awakened Birdshead and then asked him a series of questions. The officers searched his car and found an AK-47 assault rifle, a 10mm handgun, drugs, and drug paraphernalia. After the officers completed their search of his car, Birdshead allegedly ran away from the scene.

---

10. Birdshead argues, "The prejudice to Birdshead given admission of the 404(b) evidence was enormous because the evidence cast Birdshead as an armed drug dealer who possessed stolen weapons with multiple kinds of ammunition." This argument appears to speak only to the July 2012 evidence. Birdshead goes on to discuss in greater detail the prejudice resulting from the admission of the July 2012 evidence.

[¶56.] At trial, the State sought to introduce the AK-47, the 10mm handgun, and photographs of the car and its contents into evidence.[11] Birdshead renewed his objection to the admission of this evidence on relevancy and admissibility grounds: "Your Honor, I would just for the record object to relevancy and pretrial rulings, improper 404(b) and 403." The State responded that, from the court's pretrial ruling, "it would be appropriate for the firearms and drugs from July to come in at trial." Birdshead, on the other hand, asserted that, from the court's pretrial ruling, he believed "that 404(b) would not come in until after the defense had rested." The court overruled Birdshead's objection and allowed Officer Alan Childs to testify about the guns found during the July 2012 incident. Officer Childs testified that an AK-47 and ammunition were found "wrapped up" in the backseat and a 10mm handgun was found in the center console, next to the driver's seat. He elaborated that the AK-47 was unloaded and the 10mm handgun was stolen. Officer Childs further testified that an AK-47 is an "assault-type rifle." The State then presented both the actual AK-47 and 10mm handgun before the jury, and Officer Childs confirmed they were the firearms found during the investigation.

[¶57.] "Generally, evidence of crimes or acts other than the ones with which the defendant is charged are inadmissible, unless certain exceptions apply." *State v. Moeller*, 1996 S.D. 60, ¶ 12, 548 N.W.2d 465, 471. "Evidence of other crimes,

---

11. We first dispose of the State's argument that the July 18, 2012 evidence is not other-act evidence. The evidence relates to a separate, unrelated incident that occurred six months before the drug transaction at the Dakota Rose Motel. Furthermore, it appears from the record that the 10mm handgun and the AK-47 assault rifle were not present at the drug transaction with J.B. This evidence was properly characterized as other-act evidence.

wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." SDCL 19-19-404(b). However, other-act evidence "may . . . be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* The circuit court is required to conduct a two-part balancing test on the record in order to determine if the evidence is admissible. *State v. Scott*, 2013 S.D. 31, ¶ 28, 829 N.W.2d 458, 468; *State v. Andrews*, 2001 S.D. 31, ¶ 9, 623 N.W.2d 78, 81. First, the court must determine whether the other-act evidence is relevant to some material issue in the case other than character (factual relevancy). Second, the court must determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice (logical relevancy). *See Boe*, 2014 S.D. 29, ¶ 21, 847 N.W.2d at 321; *State v. Armstrong*, 2010 S.D. 94, ¶ 12, 793 N.W.2d 6, 11; *Moeller*, 1996 S.D. 60, ¶ 13, 548 N.W.2d at 472; SDCL 19-19-403.

[¶58.]       From our review of the record, the circuit court found the July 2012 evidence factually relevant when, at the pre-trial hearing, it indicated that the other-act evidence "does seem to go to the matter of whether this was an accident or not and I'm going to allow it[.]" *See Moeller*, 1996 S.D. 60, ¶ 13, 548 N.W.2d at 472 (acknowledging that the first step of the two-step analysis is to determine whether the evidence is factually relevant). However, it is undisputed that the circuit court did not conduct the second part of the balancing test *on the record* and determine whether the probative value of the July 2012 evidence substantially outweighed its prejudicial effect.

[¶59.] According to Birdshead, the failure to conduct this balancing test on the record is an abuse of discretion as a matter of law and denied him a fair trial. On the contrary, although we have stressed that "the balancing process undertaken by the trial court '*must be conducted on the record*[,]'" *State v. Steele*, 510 N.W.2d 661, 667 (S.D. 1994) (emphasis added), the circuit court's "mere failure to make a record of its Rule 403 weighing is not reversible error[,]" *Smith v. Tenet Healthsystem SL, Inc.*, 436 F.3d 879, 885 (8th Cir. 2006). Instead, when there is a specific objection pursuant to Rule 403 and the court rules on that objection, we presume that the circuit court weighed the evidence before ruling on the motion. *See id.*; *see also United States v. McCourt*, 468 F.3d 1088, 1092 (8th Cir. 2006); *United States v. Merriweather*, 78 F.3d 1070, 1078 n.1 (6th Cir. 1996) ("[T]he district court did not expressly engage in the Rule 403 balancing, so we simply assume that the court implicitly held that balance favored admission.").

[¶60.] Nonetheless, Birdshead further contends that the circuit court abused its discretion and denied him due process when it admitted the other-act evidence. In particular, Birdshead argues that possessing an AK-47 or 10mm handgun is irrelevant to proving whether the gun fired accidentally on January 7, 2013, and therefore, any probative value of the evidence did not substantially outweigh its prejudicial effect. Further, according to Birdshead, he was prejudiced by the court's error because the State was permitted to argue that possessing guns became a "pattern" for Birdshead because he had "guns" at previous drug transactions. In Birdshead's view, the State also highlighted the AK-47 during its closing argument.

[¶61.] Although "the prohibition against character evidence remains as strong as ever," Rule "404(b) is not a rule of exclusion." *State v. Wright*, 1999 S.D. 50, ¶ 13, 593 N.W.2d 792, 798. Therefore, relevant other-act "evidence is *only* inadmissible if offered to prove character." *Id.* (quoting John W. Larson, *South Dakota Evidence* § 404.2(1) (1991)). Indeed, "[t]o exclude relevant evidence because it might also raise the forbidden character inference ignores the reality that '[a]lmost *any* bad act evidence simultaneously condemns by besmirching character and by showing one or more of "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident," not to mention the "other purposes" of which this list is meant to be illustrative.'" *Id.* ¶ 15, 593 N.W.2d at 799 (quoting *United States v. Beasley*, 809 F.2d 1273, 1279 (7th Cir. 1987)). As the party objecting to the evidence, Birdshead has the burden of establishing that its prejudice substantially outweighs its probative value. *See id.* ¶ 16, 593 N.W.2d at 799.

[¶62.] Although on appeal Birdshead claims that whether the killing was accidental was not at issue at trial, the jury heard evidence that Birdshead told the officers during their investigation that the gun accidentally fired. Therefore, his knowledge of firearms via his possession of an AK-47 and 10mm handgun in July 2012 was relevant to negate the inference in the current trial that his lack of experience with firearms caused the gun to fire. We further reject Birdshead's argument that the mistake or accident theory of admissibility was rendered moot by Instruction 12, which told the jury that homicide is not excusable if a *dangerous weapon* is used and it is undisputed that Birdshead used a dangerous weapon. In

addition to excusable homicide and self-defense, Birdshead asked the jury to find that the homicide was justifiable. On this claim, the jury was instructed that "[t]he kind and degree of force which a person may lawfully use in defense of himself is limited by what a reasonable person in the same situation as such person, seeing what defendant sees and knowing what the defendant knows, then would believe to be necessary." Thus, Birdshead's past experience with firearms was relevant to a material issue and not solely to prove character. The circuit court did not abuse its discretion when it admitted the other-act evidence.

[¶63.] We further find no abuse of discretion because Birdshead did not meet his burden of proving that the probative value of the evidence is substantially outweighed by its prejudicial effect. *See State v. Fisher*, 2011 S.D. 74, ¶ 32, 805 N.W.2d 571, 578. To exclude evidence under Rule 403, "the danger of unfair prejudice must not only outweigh the probative value, [] it must outweigh it *substantially*." *State v. Smith*, 1999 S.D. 83, ¶ 19, 599 N.W.2d 344, 350 (emphasis added). Indeed, "[d]amage to the defendant's position is no basis for exclusion; the harm must come not from prejudice, but from 'unfair' prejudice." *Wright*, 1999 S.D. 50, ¶ 16, 593 N.W.2d at 799. Prejudice "refers to the unfair advantage that results from the capacity of the evidence to persuade by illegitimate means." *Moeller*, 1996 S.D. 60, ¶ 38, 548 N.W.2d at 478 (quoting *State v. Iron Shell*, 336 N.W.2d 372, 375 (S.D. 1983)). However, we do not decide "whether we would have admitted the prior bad acts evidence if we had been the trial judges." *See State v. Mattson*, 2005 S.D. 71, ¶ 21, 698 N.W.2d 538, 546.

[¶64.] From our review of the record, no such unfair advantage resulted, and the evidence that Birdshead possessed an AK-47 and 10mm handgun in July 2012 did not have the capacity to persuade the jury by illegitimate means. And even if the evidence was improperly admitted, the error was harmless. *See State v. Reay*, 2009 S.D. 10, ¶ 50, 762 N.W.2d 356, 370. "The harmless error doctrine preserves the essential purpose of criminal trials: to decide a defendant's guilt or innocence. The rule 'promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error.'" *State v. Frazier*, 2001 S.D. 19, ¶ 30, 622 N.W.2d 246, 258 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 681, 106 S. Ct. 1431, 1436, 89 L. Ed. 2d 674 (1986)).

### *"Drug dealer"*

[¶65.] In a separate assignment of error, Birdshead argues that it was fundamentally unfair for the circuit court to have permitted the State to violate the court's motion in limine and refer to him as a "drug dealer" during trial. At a pre-trial hearing, the circuit court prohibited the State from referring to Birdshead as a "drug dealer":

> **The court**: I will not permit [Birdshead] to be referred to as a drug dealer. You can establish facts, but referring to anyone in any derogatory context - -
>
> **The State**: So I may refer he has in the past dealt drugs, but I may not call him a drug dealer. Is that the [c]ourt's ruling?
>
> **The court**: You may talk about facts.

During trial, the State referred to Birdshead as a drug dealer once during opening statements and twice during closing arguments.[12]

[¶66.] Here, Birdshead did not object to the State calling him a "drug dealer" during the State's opening argument. At the conclusion of the opening statements, Birdshead moved for a mistrial based on the alleged violation of the motion in limine:

---

12. During opening statement, the State said:

> **The State**: And the evidence will then tell you he used force well beyond that which was necessary and reasonable to resist a simple assault, and not because of what was happening there in the parking lot of the Dakota [R]ose, but because of what had happened to him in the past with other people and other circumstances where he entered the dangerous situations as a drug user, drug buyer, or *drug dealer*, that he utilized an illegal weapon in the application of force, and that ultimately his decisions ranging from those in the moment, hours before, days and weeks before are what ultimately caused [sic] Eustacio Marrufo his life.

(Emphasis added.) Then, during closing argument, the State said:

> **The State**: So we know that Mr. Birdshead was assaulted. We know he was punched. But I submit to you, ladies and gentlemen, that the kind and degree we're talking about relate more to opening old wounds and reminding him of old wounds than it has anything to do with what Eustacio Marrufo was doing, and that a reasonable person, *not a reasonable drug dealer*, a reasonable person in that circumstance would have reacted very differently and should have.
> . . . .

> **The State**: But what I submit to you, ladies and gentleman, is that there is in fact a double standard here and Charles Birdshead is begging you to apply it, begging you to grant him the *battered drug dealers syndrome*, where if I've been beaten up enough times during drug transactions, when the next one comes around, I get to use a gun even if the rest of you couldn't because I live in that world.

(Emphasis added.)

> **Defense counsel**: There were a couple of issues that arose during [the State's] opening. Your Honor, I did not object because the opening is not evidence. But [the State] violated the motion in limine that stated that he would not refer to my client as a "drug dealer." When he was talking about how and why or -- anyway, those two, he described my client as a drug dealer and that is a direct violation of this [c]ourt's motion in limine to prohibit him from doing that.

The court denied the motion, but reserved its ruling on the matter and said that Birdshead may renew his objection after the close of evidence.

> **The court**: I'm going to reserve my ruling. You'll be allowed – your motion [for mistrial] will be denied at this point. You can renew it at the close of evidence.

Birdshead never renewed his motion for a mistrial based on these grounds, and, therefore, Birdshead waived his argument as to the State's comments during opening statements. *See State v. Graham*, 2012 S.D. 42, ¶ 19 n.11, 815 N.W.2d 293, 302 n.11 (stating that Graham's failure to renew objection constituted a waiver of the objection); SDCL 19-19-103. Birdshead also waived his argument concerning the State's comments during closing arguments by failing to object. *Roach*, 2012 S.D. 91, ¶ 27, 825 N.W.2d at 266 (a failure to object waives the issue on appeal). Even assuming Birdshead's arguments were not waived, the State was allowed to establish that Birdshead had previously engaged in drug transactions. The State also had the right, during closing argument, to refute Birdshead's argument that his action with the shotgun was reasonable in the context of a drug transaction.

[¶67.]  **8.  Whether the cumulative errors denied Birdshead a fair trial.**

[¶68.]  Finally, Birdshead argues that the cumulative effect of the errors in this case denied him due process and a fair trial under South Dakota law and the

#26987

United States Constitution. *See State v. Wright*, 2009 S.D. 51, ¶ 69, 786 N.W.2d 512, 534. Because this case is remanded in part, we do not reach this issue.

[¶69.]        We affirm in part and remand in part.

[¶70.]        GILBERTSON, Chief Justice, ZINTER, Justice, and KONENKAMP, Retired Justice, concur.

[¶71.]        SEVERSON, Justice, concurs specially.

[¶72.]        KONENKAMP, Retired Justice, sitting for KERN, Justice, disqualified.


SEVERSON, Justice (concurring specially).

[¶73.]        I write specially to discuss the use of other-acts evidence under SDCL 19-19-401 to -403, and -404(b). Our opinions and those of other courts are laden with many pages of tortured logic addressing other-acts evidence, frequently springing from attempts by litigants to utilize other-acts evidence for purposes contrary to the rules and from courts failing to clearly identify for juries how other-acts evidence should be considered. The rationales embodied in the rules are clear from the plain meaning derived from the language in the rules.

[¶74.]        First, the court must determine under SDCL 19-19-401 whether evidence is relevant, which is defined as "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." This is a pretty simple concept.

[¶75.] Second, under SDCL 19-19-402, "[a]ll relevant evidence is admissible, except as otherwise provided by constitution or statute or by this chapter [(South Dakota Rules of Evidence)] or other rules promulgated by the Supreme Court of this state. Evidence which is not relevant is not admissible." Again this is pretty simple logic.

[¶76.] Third, the court needs to skip to Rule 404(b). "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." SDCL 19-19-404(b). Again this is simple and clear language. The rule then goes on to explain that other crimes, wrongs, or acts "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.*

[¶77.] Fourth, the court needs to go back to SDCL 19-19-403 and apply a balancing test. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." SDCL 19-19-403.

[¶78.] Much of the fog surrounding other-acts evidence could be cleared by courts: (1) identifying the specific purpose for which the other-acts evidence is admitted, (2) using limiting instructions clarifying for the jury the limited purpose for which the evidence can be used, *see* SDCL 19-19-105; *McDowell v. Citicorp U.S.A.*, 2007 S.D. 53, ¶ 20, 734 N.W.2d 14, 20 ("[I]f the evidence is admitted, the court should instruct the jury on the limited purpose for which the jury may

consider the evidence."), and (3) enforcing the rules of evidence at trial to limit consideration of the evidence to the purpose for which it is admitted.

[¶79.]     In this case Judge Eklund identified the purpose for which the evidence of weapon possession from the incident on another date, July 2012, could be introduced. Defendant claimed that the charged crime was in fact an accident. The court at a pretrial hearing indicated the other-acts evidence went to whether the incident was an accident or not. Although the court did not include the required balancing on the record, we are applying the rationale from *United States v. Merriweather* and other cases that a reversal is not required since it is apparent from the record as a whole that the court did in fact balance the probative value, determining that it was not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. 78 F. 3d 1070 (6th Cir. 1996); *supra* ¶ 59. This does not eliminate the need to balance under Rule 403 and to make a record. A reversal is simply not a required remedy for abuse of the court's discretion in this case when the record as a whole indicates the judge did in fact perform the required balancing.