#27832-a-LSW

**2016 S.D. 87**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

    v.

CHARLES BIRDSHEAD,                        Defendant and Appellant.


* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE WALLY EKLUND
Judge

* * * *

MARTY J. JACKLEY
Attorney General

CRAIG M. EICHSTADT
Assistant Attorney General
Pierre, South Dakota                      Attorneys for plaintiff
                                          and appellee.


JAMY PATTERSON
Rapid City, South Dakota                  Attorney for defendant
                                          and appellant.

* * * *

CONSIDERED ON BRIEFS
ON NOVEMBER 7, 2016

OPINION FILED **12/07/16**

WILBUR, Justice

[¶1.] In this second appeal, the defendant challenges the circuit court's ruling on limited remand that the State did not violate the defendant's due process rights or commit a *Brady* violation in regard to the production of certain records. We affirm.

## Background

[¶2.] In 2013, a jury found Charles Birdshead guilty of first-degree manslaughter, commission of a felony with a firearm, and possession of a controlled weapon. Birdshead appealed his convictions, asserting eight issues for this Court's review. *See State v. Birdshead* (*Birdshead I*), 2015 S.D. 77, 871 N.W.2d 62. One issue from the first appeal is relevant to this appeal—whether the State committed a *Brady* violation when it denied Birdshead access to the Unified Narcotics Enforcement Team (UNET) files. *See id.* ¶ 46. This Court could not determine if a *Brady* violation occurred because the UNET files were not in the record. We, therefore, issued a limited remand. We directed the circuit court "to include the UNET files within the record and reconsider the *Brady* issue as to the UNET files." *Id.* ¶ 49.

[¶3.] On remand, the circuit court issued a letter to the parties. The court informed the parties that it "reviewed the entire file [on remand] and the UNET/intelligence files are not contained therein." It asked "the State to submit the records which it was ordered to provide on May 7, 2013, for [the court's] in-camera review so that [the court] may determine whether a Brady violation

occurred." The court indicated that it would issue a written decision after reviewing the evidence.

[¶4.]     Birdshead responded with a motion for a new trial. He asserted that the circuit court could not comply with this Court's remand directive because the record as it existed before the trial did not contain the UNET files. In Birdshead's view, the fact the record never contained the files meant that the State violated the circuit court's discovery order in 2013 by not submitting any UNET files prior to trial. Birdshead also requested a new trial because of newly discovered evidence that one of the State's key witnesses committed perjury.

[¶5.]     On January 11, 2016, the circuit court held a hearing. The court indicated that it had mistakenly believed it had received the UNET records prior to the 2013 trial. The court concluded that it could nevertheless review the information it directed the State to submit on remand and rule whether the UNET records contained *Brady* material and whether Birdshead should receive a new trial. Birdshead requested an evidentiary hearing. The court denied Birdshead an evidentiary hearing on his claim that newly discovered evidence warranted a new trial, and, ultimately, denied his motion for a new trial. The court did not give a reason for the denial.

[¶6.]     In regard to the UNET records, the court held an evidentiary hearing on February 1, 2016. Birdshead again argued that the State violated the circuit court's discovery order when it submitted no UNET files in 2013 and when it submitted UNET files in 2015 only on those witnesses the State had called to testify at trial. According to Birdshead, the court's 2013 discovery order meant the State

had to conduct a UNET record search on all the witnesses on the State's pre-trial witness list. He argued that to conclude otherwise would deprive him of the right to determine whether *Brady* material existed on potential witnesses. Birdshead also requested access to review the materials submitted to the circuit court by the State and to examine the procedure in which the records were produced to the circuit court.

[¶7.] In response, the State argued that it did not violate the circuit court's 2013 discovery order. The State claimed that the language of the court's order required the State to produce UNET records on witnesses it intended to call at trial, not the 40-plus witnesses on its pre-trial witness list. So, in the State's view, it was required on remand to conduct a search on the witnesses that it had in fact called to testify at Birdshead's 2013 trial.

[¶8.] At the hearing, Birdshead called Gina Nelson, a prosecutor for the Pennington County State's Attorney Office, and Pat West, the supervisor for the Division of Criminal Investigation in western South Dakota, to testify. West testified that he conducted the 2015 search for any files, records, or documents related to the witnesses the State had called to testify at Birdshead's 2013 trial. The search, according to West, produced 77 pages of information. West relayed that he had someone from his office deliver the information to the circuit court. Attorney Nelson testified that she had not seen the information contained in the 77 pages. In regard to the State's compliance with the court's discovery order *prior* to Birdshead's trial, Attorney Nelson testified that, in 2013, she had asked that a UNET file search be conducted prior to trial, although she could not recall exactly

what names she had asked to be searched. The court continued the hearing to allow Birdshead an opportunity to examine Sergeant Tony Harrison of the Pennington County Sheriff's Office.

[¶9.]     In the second evidentiary hearing, Sergeant Harrison testified that in 2013, someone from the State's Attorney Office had asked him to conduct a UNET file search on "several" persons. Sergeant Harrison testified that he kept no record of the State's Attorney Office's 2013 request, the parameters of the search he conducted, or the results. He testified from memory that his 2013 search produced no UNET files for the persons on the State's Attorney Office's list.

[¶10.]     At the conclusion of the continued hearing, Birdshead argued that the State continued to violate the circuit court's 2013 discovery order because the State had yet to produce the UNET search results for all 40-plus witnesses on the State's pre-trial witness list. The circuit court disagreed with Birdshead's interpretation of the court's 2013 discovery order. The court quoted exchanges between counsel and the court in April and May 2013, during which Birdshead's counsel agreed that a proper interpretation of the court's discovery order meant that the State was required to produce the "UNET/intelligence files" on the witnesses the State intended to call at trial, not all the witnesses on the State's pre-trial witness list. In regard to the UNET information produced in 2015, the circuit court ruled that the State did not violate the court's discovery order when it requested a UNET record search only on those witnesses the State had called to testify in 2013. In regard to the information produced, the court ruled that the records contained no evidence warranting a new trial.

[¶11.]     The State issued proposed findings and conclusions, and Birdshead issued objections and proposed findings and conclusions. The court identified that a representative from UNET had provided the court with records on two individuals in December 2015 for an in-camera review. The court held that the UNET records contained "no evidence favorable to the accused; as either inculpatory or exculpatory information." The court also found that the UNET records contained no impeachment evidence. The court noted that the records contained information about a testifying witness, Shy Bettelyoun. The record described her as a drug dealer. But, during Birdshead's trial, Birdshead examined Bettelyoun and learned that Bettelyoun was under federal indictment as a drug dealer. So the court concluded that the information was made available for the jury's consideration at trial. The court held upon its review that the State committed no *Brady* violation as it pertained to the UNET records. The court denied Birdshead relief.

[¶12.]     Birdshead appeals, asserting two issues for our review:

1.     Whether the State committed a *Brady* violation and violated Birdshead's due process rights when it failed to disclose certain records for an in-camera review prior to Birdshead's jury trial.

2.     Whether the circuit court abused its discretion and violated Birdshead's due process rights when it denied Birdshead a new trial.

## Analysis

### 1. Discovery Order Violation and *Brady* Violation

[¶13.]     Birdshead argues that there is an inadequate record for this Court to review whether his due process rights were violated *in 2013* because the State produced no UNET records in 2013, and the circuit court did not in fact review any

-5-

UNET records prior to his trial. Birdshead relies on his view that our decision in *Birdshead I* hinged on our belief that the State in fact produced the records for the circuit court's review and that the circuit court had reviewed the records.

[¶14.] Whether Birdshead's due process rights were violated *in 2013* depends on what *could have been produced* in 2013 and if what could have been produced contains evidence material to the issue of Birdshead's guilt.* "[I]n order to find error, the defendant must establish that the belated disclosure of evidence was material to the issue of guilt, because if it was not material, it could not be violative of due process." *State v. Moeller*, 2000 S.D. 122, ¶ 76, 616 N.W.2d 424, 446 (internal citation omitted).

[¶15.] In response, Birdshead argues that this Court (and the circuit court) cannot determine if a *Brady* violation occurred in 2013 because the State has yet to comply with the circuit court's 2013 discovery order. The circuit court's 2013 discovery order provided "that the State disclose, for in-camera review, any information contained in criminal cases and/or UNET/intelligence files on any witness the State intends to call at the jury trial in this matter." Birdshead claims that the only way to know who the State "intended" to call in 2013 would be to look at who the State listed on its pre-trial witnesses list in 2013. As an example,

---

\* In a footnote, Birdshead argues that he was prejudiced because he could not in 2013, and cannot now, determine whether the information the court reviewed in camera contained evidence material to the issue of guilt. Birdshead does not have an absolute right to see the UNET records. The circuit court, by conducting an in-camera review of the information, protected the confidentiality of the UNET documents while ensuring Birdshead's due process rights were not violated. This Court provides the same protection by independently reviewing the information the circuit court examined.

Birdshead refers to witness Milk. The State did not call Milk at trial, Birdshead did. But according to Birdshead, the State *intended* to call Milk in its case-in-chief because Milk's testimony was central to the State's conviction of Birdshead.

[¶16.]     Before we examine whether a *Brady* violation occurred in 2013, we address Birdshead's claim that the State violated the circuit court's 2013 discovery order. We review the violation of a discovery order for an abuse of discretion. *State v. Muhm*, 2009 S.D. 100, ¶ 37, 775 N.W.2d 508, 521. We "presume the evidentiary rulings made by a trial court are correct, and review those rulings under an abuse of discretion standard." *State v. Krebs*, 2006 S.D. 43, ¶ 19, 714 N.W.2d 91, 99.

[¶17.]     The circuit court rejected Birdshead's interpretation of the 2013 discovery order and ruled that the State complied with the discovery order by requesting a UNET record search on the witnesses the State had called to testify in the 2013 trial. As support, the court relied on the exchange during the April and May 2013 hearings between the court and counsel. In those hearings, Birdshead's counsel agreed that the discovery order did not include all the witnesses on the State's pre-trial witness list—only the witnesses the State intended to call at trial. After quoting this language aloud to Birdshead's counsel at the 2015 hearing, the circuit court said, "So that was the state of the record as of May 6, 2013." Counsel for Birdshead responded, "Right." Birdshead has not established that the circuit court abused its discretion in interpreting its 2013 discovery order.

[¶18.]     We next address the circuit court's conclusion that the State did not commit a *Brady* violation. A violation of a defendant's due process rights occurs when the State suppresses evidence favorable to the defendant when the evidence is

material either to guilt or punishment. *Birdshead I*, 2015 S.D. 77, ¶ 44, 871 N.W.2d at 77 (quoting *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196-97, 10 L. Ed. 2d 215 (1963)). "Such evidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Strickler v. Greene*, 527 U.S. 263, 280, 119 S. Ct. 1936, 1948, 144 L. Ed. 2d 286 (1999). As the United States Supreme Court noted in *Strickler*,

> There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.

*Id.* at 281-82, 119 S. Ct. at 1948. *See also Thompson v. Weber*, 2013 S.D. 87, ¶ 38, 841 N.W.2d 3, 12. "Prejudicial error is 'that which in all probability must have produced some effect upon the final result and affected rights of the party assigning it.'" *State v. Spiry*, 1996 S.D. 14, ¶ 11, 543 N.W.2d 260, 263 (quoting *K & E Land & Cattle, Inc. v. Mayer*, 330 N.W.2d 529, 533 (S.D. 1983)).

[¶19.] The circuit court directed the State to produce documents in compliance with its 2013 discovery order. The State submitted documents, and the court added those documents to the record in two sealed manila envelopes. Both envelopes display the respective dates the envelopes were received. One envelope has "Attn: Judge Eklund" on the cover, the judge's initials, and a notation of "77 pages." The other envelope denotes that it was "received in open court February 1, 2016 From Pat West." We have reviewed the documents in these envelopes and the related hearing transcripts. Based on our independent review, we conclude that the

circuit court's portrayal of the information is accurate. The documents do not contain evidence favorable to Birdshead in exculpation or impeachment. The court did not err when it concluded that the State committed no *Brady* violation.

### 2. Motion for a New Trial

[¶20.] Birdshead asserts that a new trial is warranted because of misconduct of an adverse party, inadvertence or mistake, and newly discovered evidence, citing SDCL 15-6-60(b). Birdshead claims that the State committed misconduct when it did not produce UNET records prior to the 2013 trial. He also asserts that, at the very least, the circuit court's failure to ensure it reviewed the UNET records prior to the 2013 trial constitutes a mistake. In regard to his claim that newly discovered evidence warrants a new trial, Birdshead argues that witness Milk perjured his testimony at Birdshead's trial and that Attorney Mark Vargo told Milk that Attorney Vargo would try to get Milk out of the parole violation he was facing if he cooperated with the prosecution.

[¶21.] Birdshead did not file a motion for a new trial under SDCL 23A-29-1. Birdshead, however, claims that he timely filed his motion for a new trial under SDCL 15-6-60(b) because this Court did not file the remitter on *Birdshead I* until February 7, 2014, and he did not learn of the circuit court's failure to review the UNET records in 2013 until *after* this Court's decision in *Birdshead I*. While we agree that Birdshead could not have known how this Court would decide *Birdshead I*, Birdshead cites no authority for the proposition that SDCL 15-6-60(b) applies in this case. More importantly, Birdshead's motion for a new trial on the basis of the UNET records was unnecessary. Our remand directive required the circuit court to

consider whether Birdshead would be entitled to a new trial related to the UNET records.

[¶22.]    In regard to his motion for a new trial because of newly discovered evidence about witness Milk, Birdshead argues that the circuit court was required to hold an evidentiary hearing. We disagree. "When the scope of remand is limited, the entire case is not reopened, but rather, the lower tribunal is only authorized to carry out the appellate court's mandate." *State v. Piper* (*Piper III*), 2014 S.D. 2, ¶ 11, 842 N.W.2d 338, 343 (quoting *In re Conditional Use Permit to Van Zanten*, 1999 S.D. 79, ¶ 13, 598 N.W.2d 861, 864). Our remand directive in *Birdshead I* did not resurrect the circuit court's original jurisdiction. *See id.* ¶ 10. It placed before the circuit court only the issue whether a *Brady* violation occurred in regard to the UNET records. We have said that where a direct appeal is no longer an option, habeas corpus is a possible avenue for post-conviction relief. *State v. Pentecost*, 2015 S.D. 71, ¶ 6, 868 N.W.2d 590, 592 (quoting *State v. Anderson*, 2005 S.D. 22, ¶ 24, 693 N.W.2d 675, 682).

[¶23.]    Alternatively, Birdshead claims that plain error occurred and that, because of the cumulative errors in his case, he was denied due process. "In South Dakota, due process does not guarantee a defendant the right to an error-free trial[;] nevertheless it must be a fair trial." *State v. Hayes*, 2014 S.D. 72, ¶ 37, 855 N.W.2d 668, 680 (quoting *State v. Smith*, 1999 S.D. 83, ¶ 52, 599 N.W.2d 344, 355). Although Birdshead did not have an error-free trial, Birdshead has failed to prove he was denied a fair trial. *See State v. Wright*, 2009 S.D. 51, ¶ 69, 768 N.W.2d 512, 534.

[¶24.]    Affirmed.

[¶25.]    GILBERTSON, Chief Justice, and ZINTER and SEVERSON, Justices, and MACY, Circuit Court Judge, concur.

[¶26.]    MACY, Circuit Court Judge, sitting for KERN, Justice, disqualified.