KONENKAMP, Justice (on reassignment).
[¶ 1.] Defendant was convicted of raping a twenty-three-year-old woman who testified that she was too intoxicated to have consented. He appeals asserting that although SDCL 22-22-1(4) does not explicitly include a knowledge element, the circuit court erred when it failed to instruct the jury that the State must prove that he knew that the woman’s intoxicated condition made her unable to consent. Because mere silence by the Legislature on whether knowledge is a necessary element of an offense will not always negate a knowledge requirement, especially for crimes with potentially severe punishments, we conclude that the Legislature intended that a rape conviction under SDCL 22-22-1(4) requires proof that the defendant knew or reasonably should have known that the victim’s intoxicated condition rendered her incapable of consenting.
Background
[¶ 2.] Around 8:00 p.m. on October 18, 2008, E.B. and her co-worker and friend, Abby, began celebrating Abby’s twenty-first birthday together. They started at Bill’s Bar in Sioux City. E.B. estimated she consumed eight to ten beers and at least three shots of liquor. At 1:00 a.m., the women met Abby’s boyfriend, Chance, and his friend, Christopher Jones, at another bar. Although E.B. knew Chance, this was her first time meeting Jones. The group continued to drink before going to Chance’s house. Chance lived with Brent. When they arrived at the home, Chance, Jones, Abby, and E.B. got into a hot tub. E.B. consumed another three or four beers. Chance and Abby eventually left the hot tub to go to bed. Jones and E.B. also left the hot tub, but sat on barstools in the kitchen and conversed with Brent, who had been awakened from the noise of everyone in the hot tub. Brent later testified to having one beer during the conversation in the kitchen. E.B. had another drink. Brent testified that E.B. “carried on the conversations. She, you know, didn’t seem wasted or drunk or anything like that. Wasn’t out of the ordinary.”
[¶ 3.] Around 3:30 a.m., E.B. went to sleep on the couch in the living room. Shortly thereafter, Brent left to sleep in his room, and Jones lay down on the ottoman near the couch where E.B. was sleeping. Jones testified that E.B. asked him if he wanted to share her blanket. According to Jones, he agreed and shortly thereafter, the two had consensual sexual intercourse. Chance and Abby testified that they saw Jones and E.B. asleep together on the ottoman early the next morning.
[¶ 4.] E.B. testified that although she went to sleep on the couch, she woke up on the floor with Jones on top of her, orally and digitally penetrating her. After physically resisting and verbally refusing, E.B. succeeded in getting Jones off of her. Because of the amount of alcohol she drank, E.B. testified she went back to sleep on a nearby chair instead of leaving. E.B. awoke a second time on the couch, with Jones behind her, with her pants and underwear at her knees and Jones penetrating her from behind. E.B. testified she yelled at Jones, pulled her clothes back on, and retreated to the bathroom until Jones left. E.B. went to the hospital the next day and reported the rape. An examination of E.B. and her clothes revealed Jones’s sperm. Officers arrested Jones and he was subsequently charged with two counts of third degree rape in violation of SDCL 22-22-1(4), and two counts of sexual contact in violation of SDCL 22-22-7.1 and SDCL 22-22-7.2.
*411 [¶5.] In the jury trial, Jones testified in his defense saying, “I don’t know if she was intoxicated that night.” At some point thereafter, he requested the following jury instruction related to consent:
Consent is not a defense to the crime of Rape, defined as sexual penetration where the victim is incapable of giving consent because of intoxication, if the victim is unable to exercise reasonable judgment as to the harm involved and if the Defendant knew that the person was unable to exercise reasonable judgment.
(Emphasis added.) The court refused Jones’s requested instruction, and ultimately gave its own:
Consent is not a defense to the crime of rape in the third degree where the victim is incapable of giving consent because of intoxication. In determining whether the victim was incapable of giving consent because of intoxication you must consider all the circumstances in determining whether the victim’s intoxication rendered her unable to exercise reasonable judgment in the process of forming mental or intellectual decisions and of discerning or comparing all the circumstances present at the time. It is not enough that the victim is intoxicated to some degree, or that the intoxication reduces the victim’s sexual inhibitions, in order to establish that the level of the victim’s intoxication deprives the victim of the legal capacity to consent to the sexual act.[1]
Jones objected to this instruction and orally requested the addition of the emphasized language:
Consent is not a defense to the crime of rape in the third degree where the victim is incapable of giving consent because of intoxication and the Defendant knew that person was incapable of giving consent because of intoxication....
(Emphasis added.) In ruling against Jones’s request, the court explained:
Whether the defendant knew or didn’t know the person was intoxicated is subjective knowledge, I don’t think is relevant or an element to the crime. I think the only issue is whether she was so intoxicated that she wasn’t able to give consent and I think I’ve instructed on that. I think that’s a correct instruction of the law, so I’m not going to submit the additional proposed language....
[¶ 6.] The jury found Jones guilty of two counts of third degree rape in violation of SDCL 22-22-1(4). The circuit court sentenced him to fifteen years on each count of third degree rape, to be served consecutively, with eight years suspended on each conviction on certain conditions. Jones appeals, asserting that the court erred when it refused his requested jury instruction and when it denied his motion for a judgment of acquittal.[2]
Analysis and Decision
[¶7.] Jones argues that the Legislature did not intend rape by intoxication to be a strict liability offense. He emphasizes that “[tjhere is no arbitrary measuring stick for rape by intoxication as there is for sexual intercourse with a minor where an element to the offense is the child’s age.” The State responds that Jones’s knowledge of E.B.’s intoxication is irrelevant because SDCL 22-22-1(4) does *412 not have a knowledge or specific intent requirement. According to the State, as long as it proves E.B. was “incapable of giving consent because of any intoxicating agent,” Jones can be convicted under SDCL 22-22-1(4).
[¶ 8.] “Statutory interpretation is a question of law subject to de novo review.” State v. Davis, 1999 S.D. 98, ¶ 7, 598 N.W.2d 535, 537 (citing City of Sioux Falls v. Ewoldt, 1997 S.D. 106, ¶ 12, 568 N.W.2d 764, 766). SDCL 22-22-1(4) defines third degree rape as
an act of sexual penetration accomplished with any person under any of the following circumstances: ... (4) If the victim is incapable of giving consent because of any intoxicating agent, narcotic, or anesthetic agent or hypnosis[.]
This language places no apparent requirement on the State to prove that the accused knew or reasonably should have known the victim was too intoxicated to consent.
[¶ 9.] Certainly, our Legislature has the prerogative to create strict liability crimes. State v. Mouttet, 372 N.W.2d 121, 123 (S.D.1985) (bail jumping); State v. Nagel, 279 N.W.2d 911, 915 (S.D.1979) (securities laws). Therefore, our primary question must be, what did the Legislature intend? Looking to the history of SDCL 22-22-1(4) before 1985, rape by intoxication required that the State prove that the accused or someone in privity with the accused administer the intoxicating or narcotic agent or hypnosis to the victim. State v. Galati, 365 N.W.2d 575, 578 (S.D.1985); see also 1985 S.D. Sess. Laws 359 ch. 179. Under that statutory requirement, the defendant in Galati argued that he could not be convicted of rape by intoxication because the State failed to prove that he or someone in privity with him administered the intoxicating agent. This Court agreed and reversed Galati’s rape conviction. Thereafter, in 1985, the Legislature removed the requirement that the accused administer the agent in order to be guilty. Whether intentionally or unintentionally, by removing the requirement that the accused administer the incapacitating element, the Legislature also removed the necessity of proving that the accused had knowledge of the victim’s incapacitated condition. That SDCL 22-22-1(4) previously required the accused or someone in the accused’s privity to administer the agent presupposes that the accused knew or reasonably should have known of the victim’s incapacitated state. With this change, did the Legislature intend to make SDCL 22-22-1(4) a strict liability offense, so that in Galati, for example, a conviction could have been sustained even if he had not known the victim was under the influence of an intoxicating agent.[3]
[¶ 10.] In grappling with similar questions, the United States Supreme Court has declared that “offenses that require no mens rea generally are disfavored[.]” Staples v. United States, 511 U.S. 600, 606, 114 S.Ct. 1793, 1797, 128 L.Ed.2d 608 (1994). This is because “[t]he existence of a mens rea is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence.” Id. at 605, 114 S.Ct. at 1797 (citation omitted). Consequently, “some indication of congressional intent, express or implied, is required to dispense with mens rea as an *413 element of a crime.” Id. at 606, 114 S.Ct. at 1797. And “silence on this point by itself does not necessarily suggest that Congress intended to dispense with a conventional mens rea element, which would require that the defendant know the facts that make his conduct illegal.” Id. at 605, 114 S.Ct. at 1797 (citation omitted).
[¶ 11.] Indeed, the Supreme Court has “avoided construing criminal statutes to impose a rigorous form of strict liability.” See Id. at 607 n. 3, 114 S.Ct. at 1798 n. 3 (citing United States v. Int’l Minerals & Chem. Corp., 402 U.S. 558, 563-64, 91 S.Ct. 1697, 1700-01, 29 L.Ed.2d 178 (1971)). We have done likewise in similar circumstances. In several cases, after considering our entire statutory scheme, we have read “knowledge” into statutes, concluding that the Legislature did not intend to punish innocent conduct.[4] State v. Stone, 467 N.W.2d 905, 906 (S.D.1991); State v. Barr, 90 S.D. 9, 15, 237 N.W.2d 888, 890-91 (1976). “Whether criminal intent or guilty knowledge is an essential element of a statutory offense is to be determined by the language of the act in connection with its manifest purpose and design.” Nagel, 279 N.W.2d at 915.
[¶ 12.] We have often declared that “[w]hen the language of a statute is clear, certain, and unambiguous, there is no occasion for construction, and this Court’s only function is to declare the meaning as clearly expressed in the statute.” State v. Schmidt, 410 N.W.2d 539, 541 (S.D.1987) (citation omitted); see also Davis, 1999 S.D. 98, ¶ 7, 598 N.W.2d at 537. Yet we have always reserved a caveat: we will not read statutes literally, if they lead to an “absurd or unreasonable result[.]” State v. Wilson, 2004 S.D. 33, ¶ 9, 678 N.W.2d 176, 180; Davis, 1999 S.D. 98, ¶ 7, 598 N.W.2d at 537. Considering the seriousness of this offense, today we look beyond plain language to discern the “purpose and design” of SDCL 22-22-1(4). Third degree rape under SDCL 22-22-1(4) is a crime against the person and carries a maximum penalty of twenty-five years in the penitentiary and a fifty-thousand dollar fine. SDCL 22-6-1(5). With a punishment this severe, strict liability is ordinarily not inferred. See People v. Nasir, 255 Mich.App. 38, 662 N.W.2d 29, 33 (2003). Furthermore, along with the severity of the punishment is the potential that interpreting the statute as not including mens rea would lead to the criminalization of “a broad range of apparently innocent conduct.” Liparota v. United States, 471 U.S. 419, 426, 105 S.Ct. 2084, 2088, 85 L.Ed.2d 434 (1985). South Dakota no longer criminalizes sexual relations between consenting adults, having long repealed the crimes of adultery and fornication.
[¶ 13.] If we read SDCL 22-22-1(4) literally, we mark South Dakota as the only jurisdiction to hold that even when a man *414 accused of rape convinces a jury that he reasonably and in good faith believed he had engaged in consensual adult sex, the jury must disregard his innocent state of mind if the woman he had sex with later establishes that she drank too much to have given her consent. See, e.g., CaLPe-nal Code 261 (2009); Minn.Stat. 609.345 (2009); Neb.Rev.Stat. 28-319 (2006); N.D. Cent.Code 12.1-20-03 (2009).[5] That is exactly what occurred here. In closing argument, armed with the court’s instructions, the prosecutor was able to tell the jurors that “even if you believe him,” when Jones testified that he thought she had consented, “it doesn’t matter because consent is not a defense in this case.”
[¶ 14.] In typical “statutory rape” cases, nonconsent is conclusively presumed because of age or physical or mental incapacity. But in cases of underage youth, unconsciousness, or mental deficiency, these conditions are readily apparent or reasonably discoverable, justifying strict liability for those who take advantage of such incapacities. For rape by intoxication, however, where is the line drawn between conscious intoxication and incapacitating intoxication? In this case, the State relied on an expert witness to help the jury understand how intoxicated the victim was. Yet the very fact that the State needed an expert makes the idea of strict liability for this offense even more problematic.
[¶ 15.] Because rape by intoxication is a serious felony and' the Legislature has not indicated its clear intent to dispense with mens rea, SDCL 22-22-1(4) must be read to include a knowledge element. The case is reversed and remanded for a new trial. The circuit court will instruct the jury that the State must prove the defendant knew or reasonably should have known that the complainant’s intoxicated condition rendered her incapable of consenting.
[¶ 16.] Reversed and remanded.
[¶ 17.] SEVERSON, Justice, and MEIERHENRY, Retired Justice, concur.
[¶ 18.] GILBERTSON, Chief Justice, and ZINTER, Justice dissent.
[¶ 19.] WILBUR, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.

. While we review a court’s wording and arrangement of jury instructions for an abuse of discretion, “a court has no discretion to give incorrect or misleading instructions, and to do so prejudicially constitutes reversible error." Kadrmas, Lee and Jackson, Inc. v. Morris, 2010 S.D. 61, ¶ 5 n. 1, 786 N.W.2d 381, 382 n. 1 (citation omitted).

. In view of our ruling on the first issue, we decline to address Jones's second issue.

. SDCL 22-22-1(4) lists hypnosis along with chemical agents (victim incapable of giving consent because of "any intoxicating, narcotic, or anesthetic agent [or] hypnosis”). Just as in the case of intoxication, under a literal interpretation of this statute, by proof that the victim was hypnotized, it would be no defense that the accused was unaware of this hypnotic state and even reasonably and in good faith believed to the contrary.

. One treatise lists various considerations courts have used when discerning legislative intent to impose liability without fault. These include: (1) legislative history; (2) other statutes providing guidance; (3) severity of the punishment provided for the crime ("other things being equal, the greater the possible punishment, the more likely some fault is required; and, conversely, the lighter the possible punishment, the more likely the legislature meant to impose liability without fault”); (4) seriousness of harm to the public which may follow from the forbidden conduct; (5) accused’s opportunity to ascertain the true facts (whether legislation really meant to impose liability on one who was without fault because he lacked knowledge of these facts— "harder to find out the truth, the more likely the legislature meant to require fault in not knowing; the easier to ascertain the truth, the more likely failure to know is no excuse”; (6) difficulty prosecuting officials would have in proving a mental state for this type of crime; and (7) number of prosecutions to be expected. Wayne R. LaFave, 1 Substantive Criminal Law Strict Liability § 5.5 (2d ed.).

. The language concerning the accused's knowledge in these state statutes is strikingly similar. California: “known or reasonably should be known to the person committing the act,” Cal.Penal Code 261; Minnesota: "the actor knows or has reason to know,” Minn.Stat. 609.345; Nebraska: “knew or should have known,” Neb.Rev.Stat. 28-319; North Dakota: "person knows or has reasonable cause to believe,” N.D. Cent.Code 12.1-20-03.