#28794-a-MES
**2020 S.D. 8**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

    v.

DONALD LEON NEKOLITE,                    Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
MCCOOK COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE CHRIS GILES
Judge

* * * *

JASON R. RAVNSBORG
Attorney General

MATTHEW W. TEMPLAR
Assistant Attorney General
Pierre, South Dakota                    Attorneys for plaintiff and
                                        appellee.


MICHAEL E. UNKE
Salem, South Dakota                    Attorney for defendant and
                                        appellant.

* * * *

                                        CONSIDERED ON BRIEFS
                                        ON MAY 28, 2019
                                        OPINION FILED **02/19/20**

SALTER, Justice

[¶1.]     Following a court trial, Donald Nekolite was convicted of driving under the influence (second offense) and hit and run involving an injury. He appeals his hit-and-run conviction, arguing that the State was required to prove he had knowledge of an accident-related injury. We affirm.

## Background

[¶2.]     On April 20, 2018, at approximately 8:30 p.m., Nekolite was driving his car eastbound on Highway 38 near Montrose when he made a sharp left turn directly in front of a sport utility vehicle (SUV) driven by Joni Wagner, who was traveling westbound on Highway 38. The vehicles collided, with the point of lateral impact occurring on the front passenger side of each vehicle. Nekolite's car came to rest partially on the shoulder and into the ditch along the westbound lane, and Wagner's SUV stopped askew on the highway. Wagner called 911 and provided the dispatcher with a description of Nekolite and his car, including its license plate number, while both parties got out of their vehicles. Wagner asked Nekolite if he was hurt, but she could not understand his response and thought he was impaired. Wagner told the dispatcher that she had hurt her left thumb, but she did not tell Nekolite that she was injured.

[¶3.]     Acting on the dispatcher's instruction to move her SUV off the highway, Wagner got into her vehicle and observed Nekolite getting into his car and driving away on the wrong side of the highway. She testified that Nekolite had remained at the accident scene for approximately seven to ten minutes before

driving away and wondered if he thought she was leaving the scene when she moved her SUV off the highway.

[¶4.]       Deputy Anna Misar of the McCook County Sheriff's Office responded to the accident and took Wagner's statement.  Wagner told Deputy Misar she had hurt her left thumb but refused medical treatment.  Wagner experienced swelling and bruising to her left thumb the next day, and a physician later diagnosed the injury as a torn radial collateral ligament, requiring Wagner to wear a splint for approximately six weeks.

[¶5.]       Pete Puthoff had been traveling behind Nekolite and stopped after witnessing the accident.  When Nekolite drove away, Puthoff followed him to the parking lot of a rural business located approximately one-quarter mile east of the accident scene.  Puthoff remained in the parking lot until Trooper Jeremy Gacke of the South Dakota Highway Patrol arrived.

[¶6.]       Trooper Gacke found Nekolite in the back seat of his car partially covered with a blanket.  Nekolite explained he was laying down because he had hurt his back.  Trooper Gacke noted Nekolite's speech was slurred, and a strong smell of intoxicants was coming from the interior of his vehicle.  He further observed that Nekolite had trouble balancing and walking to the patrol car.  When he checked Nekolite's driver's license, Trooper Gacke found it had been suspended.  After Nekolite failed field sobriety tests, Trooper Gacke placed him under arrest for driving under the influence.  He transported Nekolite to jail and obtained a search warrant for a blood draw, which yielded a result of .306 percent alcohol by weight

when analyzed. Trooper Gacke also interviewed Puthoff, who corroborated Wagner's version of the accident and her observations of Nekolite's behavior.

[¶7.] The State initially charged Nekolite with driving while under the influence (second offense), driving with a suspended license, and refusing to surrender his license. *See* SDCL 32-23-1(1); SDCL 32-23-1(2); SDCL 32-23-3; SDCL 32-12-65; SDCL 32-12-68. After Deputy Misar obtained supplemental information from Wagner about her left thumb injury, the State charged Nekolite with the additional offense of hit and run[1] resulting in an injury, which is a class 6 felony. *See* SDCL 32-34-5.[2]

[¶8.] Prior to trial, Nekolite filed what appears to have been a preemptive motion for judgment of acquittal. He argued, among other things, that he lacked any knowledge of Wagner's injury and could not, therefore, be convicted of felony hit and run under SDCL 32-34-5. The State opposed Nekolite's motion for acquittal, arguing that it was not required to prove that Nekolite "was actually aware of the injury before leaving the scene of the collision." The circuit court held the motion in abeyance until after the State completed its case-in-chief at trial.

---

1. "The term 'hit-and-run' is a baseball colloquialism which was used to describe violations of the motor vehicle code requirement that a driver involved in an accident must stop, render aid and leave his identification as required by SDCL 32-34-3 to 32-34-9." *Clark v. Regent Ins. Co.*, 270 N.W.2d 26, 31 (S.D. 1978).

2. As set out in greater detail below, it is a class 6 felony for a driver involved in a collision resulting in death or injury to fail to stop immediately and provide basic information, such as the driver's name, address, and vehicle license number. SDCL 32-34-5; *see also* SDCL 32-34-3. The driver is also obligated to render aid to anyone who may have been injured. SDCL 32-34-5 (listing minimum obligations to stop, provide information, and render aid).

[¶9.] The parties subsequently reached a partial plea agreement under which Nekolite pled guilty to the DUI offense. The State dismissed the charges for driving with a suspended license and refusing to surrender his license.

[¶10.] The felony hit-and-run charge was then tried to the court. Wagner testified consistent with her previous statements—that she had not told Nekolite she was injured, that she could not understand Nekolite, who she thought was "very impaired," and that she believed Nekolite left the accident scene because he thought she was leaving when she moved her car.[3]

[¶11.] At the close of the State's evidence, Nekolite renewed his motion for a judgment of acquittal. The circuit court denied the motion and found Nekolite guilty. In its written findings of fact, conclusions of law, and verdict, the circuit court found that Nekolite "left the scene without complying with the provisions of SDCL 32-34-3 . . . [and] before he could learn of any injury to Wagner." The circuit court also concluded that Nekolite's "knowledge of an injury, resulting from an accident, is not an element which must be proven by the State."

[¶12.] The court sentenced Nekolite to two years in the penitentiary for the felony hit-and-run conviction, suspended on the conditions that he serve 120 days in jail, pay all fines and restitution, complete two years of supervised probation, and not drive for five years. The circuit court imposed a consecutive sentence for the DUI (second offense), which is not at issue in this appeal.

---

3. Nekolite has not argued that he cannot be convicted because he did not intend to leave the scene of the accident and believed that Wagner, herself, was leaving and abandoning any interest in obtaining the information required under SDCL 32-34-3.

[¶13.] Nekolite's challenge to his felony hit-and-run conviction raises one issue for our review: Whether the circuit court erred when it found that SDCL 32-34-5 does not require knowledge of the injury as an essential element.

## Analysis

[¶14.] The circuit court found that there was no evidence that Nekolite could be charged with knowledge of Wagner's injury—a determination the State has not challenged. Therefore, the issue presented here relates solely to whether knowledge of an injury is an essential element in a prosecution under SDCL 32-34-5. Determining whether an offense requires a particular mental state "raises an issue of statutory interpretation that this Court reviews under the de novo standard." *State v. Jucht*, 2012 S.D. 66, ¶ 22, 821 N.W.2d 629, 634.

[¶15.] Three statutes form the nucleus of what may be termed South Dakota's hit-and-run statutory scheme. Initially, SDCL 32-34-3 establishes the duty of a driver involved in an accident that causes death, injury, or property damage to:

> immediately stop and give his name and address, and the name and address of the owner and the license number of the vehicle he is driving to the person struck or the driver or occupants of any vehicle collided with and shall render to any person injured in such accident reasonable assistance . . . .

[¶16.] The Legislature prescribes different punishments for failure to comply with SDCL 32-34-3 depending upon whether the accident results in injury or death, or whether it results only in damage to property. Under SDCL 32-34-5, "[a]ny driver of any vehicle involved in an accident *resulting in injury or death* to any person, who fails immediately to stop such vehicle at the scene of such accident and

comply with the provisions of § 32-34-3 is guilty of a Class 6 felony . . . ." (Emphasis added.) However, SDCL 32-34-6 makes it a class 1 misdemeanor for a driver "involved in an accident *resulting in damage to property*" who fails to "stop his vehicle at the scene of the accident and immediately give his name and address, and the name and address of the owner of the vehicle." (Emphasis added.)

[¶17.] Here, the evidence establishes that Nekolite did not comply with the requirements of SDCL 32-34-3, and he does not argue otherwise. Although he stopped after the accident, the circuit court found that Nekolite "failed to provide his own name and address, or the name and address of the owner of the vehicle he was driving, to Wagner; likewise, [he] did not provide Wagner his license number" as required under SDCL 32-34-3. Nekolite's decision to leave the accident scene abruptly, therefore, left him criminally liable—the question is to what extent.

[¶18.] Nekolite argues that the evidence would support only a misdemeanor violation because he lacked knowledge of Wagner's injury that he claims is required for a felony conviction under SDCL 32-34-5. He relies upon our holding in *State v. Minkel*, which does state that "criminal liability attaches to a driver who knowingly leaves the scene of an accident if he actually knew of the injury or if he knew that the accident was of such a nature that one would reasonably anticipate that it resulted in injury to a person." 89 S.D. 144, 148, 230 N.W.2d 233, 235-36 (1975) (quoting *People v. Holford*, 403 P.2d 423, 427 (Cal. 1965)). A careful reading of the opinion, however, reveals this statement to be dicta that we are not obligated to follow under principles of stare decisis. *See Wiersma v. Maple Leaf Farms*, 1996

S.D. 16, ¶ 5 n.1, 543 N.W.2d 787, 790 n.1 (Our statement concerning the impact of statutory amendments not before the Court was dicta and not binding.).

[¶19.]        At issue in *Minkel* was whether a defendant convicted of violating SDCL 32-34-5 must possess knowledge of the *accident*—not a resulting *injury* to a victim.  89 S.D. at 145, 230 N.W.2d at 234.  We recognized that knowledge of the accident is required and that it can be established, like other facts in criminal prosecutions, with circumstantial evidence.  *Id.* at 235.  We specifically held that the severity of the victim's injuries can be used as circumstantial evidence of a defendant's knowledge under the view that grave consequential injuries, such as those that result in a fatality, could suggest virtually inescapable knowledge that an accident had occurred.  *Id.* at 236.  Here, though, there is no question that Nekolite was aware of the accident, and the *Minkel* decision is not otherwise implicated.

[¶20.]        Unconstrained as we are from any obligation to treat *Minkel* as controlling, we approach as an open question the issue of whether a defendant must possess knowledge of a resulting injury in a prosecution under SDCL 32-34-5.  We begin with SDCL 32-34-3's requirement that a driver involved in a motor vehicle accident[4] resulting in either property damage, or injury or death must "immediately stop and give his . . . [information] to the person struck or the driver or occupants of any vehicle collided with and . . . render to any person injured in such accident reasonable assistance."  This text expresses two perceptible purposes: (1) to ensure people who are injured in motor vehicle accidents receive prompt medical care; and

---

4.    A single-vehicle accident is sufficient to trigger the requirements of SDCL 32-34-3.  *State v. Cameron*, 1999 S.D. 70, ¶ 18, 596 N.W.2d 49, 53.

(2) to ensure accountability for damages that may have been caused by negligent conduct. *See State v. Clark*, 67 S.D. 133, 290 N.W. 237, 239 (1940) (stating that under our prior hit-and-run statute, "[t]he manifest purpose of the statute is to prevent drivers from seeking to evade prosecution by escaping before their identity can be determined").

[¶21.] The provisions of SDCL 32-34-5 and SDCL 32-34-6 animate these purposes by imposing varying degrees of criminal liability depending on the consequences of the accident. However, a defendant is not punished directly for inflicting damage or injury, but rather for the failure to stop and comply with the requirements of SDCL 32-34-3. Neither SDCL 32-34-5 nor SDCL 32-34-6 expressly require knowledge of the injury or damage.[5] Most states with similar hit-and-run statutes require knowledge of the collision, but there is a split among jurisdictions on the issue of knowledge of the resulting injury. *See* Marjorie A. Caner, Annotation, *Necessity and Sufficiency of Showing, in Criminal Prosecution under "Hit-And-Run" Statute, Accused's Knowledge of Accident, Injury, or Damage*, 26 A.L.R .5th 1, §§ 4[a]–[b] (1995). We believe the better view is to hold that our statutes do not require knowledge of the injury as an essential element of an offense under SDCL 32-34-5 for two principal reasons.

---

5.  We recognize that a statute's silence, alone, does not necessarily mean that the Legislature intended to dispense with a *mens rea* requirement. *State v. Jones*, 2011 S.D. 60, ¶ 10, 804 N.W.2d 409, 412-13 (citing *Staples v. United States*, 511 U.S. 600, 606, 114 S. Ct. 1793, 1797, 128 L. Ed. 2d 608 (1994)). Indeed, our holding in *Minkel* illustrates our inclination to impose a knowledge requirement for the existence of an accident in a prosecution under SDCL 32-34-5.

[¶22.] First, we agree with the sensible observation of the Supreme Court of Delaware that "[r]equiring the State to prove the defendant's knowledge of the consequences of a collision would defeat the purpose of the statute by encouraging drivers to avoid knowledge by fleeing, rather than stopping to investigate whether anyone was seriously injured or killed." *Pardo v. State*, 160 A.3d 1136, 1146 (Del. 2017). In this regard, our statutes merely seek compliance with minimum standards for sharing information and rendering aid, if necessary. These obligations are not onerous. Indeed, Nekolite could have avoided criminal liability by simply complying with SDCL 32-34-3 regardless of whether he had knowledge of Wagner's injury.

[¶23.] Second, splicing a knowledge-of-the-injury element into the text of SDCL 32-34-5 would lead to anomalous results in its application. This is particularly true for the constructive knowledge rule adopted by some states, as illustrated in *Holford*. *See* Caner, *supra* ¶ 21, at §§ 4[a]–[b] . These constructive knowledge formulations typically allow for a finding of knowledge if the circumstances of the accident were severe enough to create a reasonable inference that a person was likely injured. *See Holford*, 403 P.2d at 427. However, this view incorrectly presumes that the injury or damage will necessarily correspond to the magnitude of the collision and, further, that the extent of injury will be immediately apparent.

[¶24.] In truth, a seemingly serious accident could result in no injuries, while a relatively minor collision could, in some instances, result in significant injuries that may not be instantly detectible. Under the latter scenario, a defendant leaving

the scene of a minor accident could conceivably be justified in believing the accident would not result in an injury, even if it actually did. If we were to accept the requirement of actual or constructive knowledge of the injury as an element of SDCL 32-34-5, the fleeing motorist could avoid a felony-grade punishment in contravention the statute's intent.

[¶25.]     Under the circumstances, the circuit court did not err when it determined knowledge of the injury was not an essential element of a felony hit-and-run offense and denied Nekolite's motion for judgment of acquittal. We affirm.

[¶26.]     GILBERTSON, Chief Justice, and KERN and JENSEN, Justices, and MEIERHENRY, Retired Justice, concur.